UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAXINE WHITE and JAMES FLANDERS, III,

        Plaintiffs,

v.

        Case No. 09-14682
        Honorable David M. Lawson

LOOMIS ARMORED US, INC.,

        Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND**

The plaintiffs in this case filed a complaint in the Wayne County, Michigan circuit court alleging violations of state law arising from their termination from employment as armored car drivers. After the defendant removed the case to this Court alleging diversity jurisdiction, the plaintiffs filed a timely motion to remand, which is now before the Court, contending that the amount in controversy is below the jurisdictional limit. The Court heard oral argument on the motion on May 27, 2010, and now finds that although one of the plaintiffs' claims may seek damages less than $75,000, the other plaintiff's claim exceeds that amount. Therefore, the Court has jurisdiction over the entire case, and the motion to remand will be denied.

I.

The plaintiffs' complaint tells a remarkable story. Both plaintiffs, Maxine White and James Flanders, III, were employed as drivers/messengers at the Highland Park office of defendant Loomis Armored US, Inc. On June 11, 2009, the plaintiffs were traveling south on I-75 near the Clay Street exit in a company truck when the side door of their armored vehicle "flew open," sending airborne an unidentified amount of cash from the vehicle. Compl. ¶ 3. According to the complaint, Flanders

previously had noticed that the side doors on the company's armored vehicles were prone to fly open, and he had reported this defect to management. Flanders states he had previously requested, but was denied, a "secure vehicle." Compl. ¶ 7. When confronted with the open door and cash circling over the freeway, the plaintiffs reportedly tried to gather in as much of the swirling cash as they could, but apparently still came up short of the original load. The plaintiffs reported the incident to their supervisors, and immediately thereafter they were escorted to Loomis's Highland Park branch office, where Branch Manager Hugh Adams and Loss Prevention Manager Darcey Hatchett suggested that the plaintiffs take a polygraph test to confirm their story. The plaintiffs were told that they could not resume work unless they both took the test, but if they passed, they would be reinstated and compensated for lost wages.

A week later, the plaintiffs took the test administered by the Michigan State Police. Flanders passed, but White's results were "inconclusive." Compl. ¶ 6. Four days later, on June 23, 2009, both plaintiffs were terminated effective June 11, 2009. Loomis stated the official reason as "the loss of liability for the incident on June 11, 2009 . . . [which is] a terminable offense under Loomis policies and procedures." Exs. A & B to Pls.' Mot. for Remand [dkt. # 7] (Flanders's and Loomis's Letters of Termination). An additional reason for termination was the plaintiffs' failure to properly secure the load inside the armored vehicle. When leaving the company, both employees requested copies of their personnel files. The complaint alleges that Branch Manager Hugh Adams refused to produce a copy of White's personnel file absent a court order. According to the complaint, the company failed to respond to two of Flanders's letters requesting copies of his personnel file.

The plaintiffs' complaint alleges (1) a violation of the Michigan Polygraph Protection Act, Mich. Comp. Laws § 37.201 *et seq.*, and (2) a violation of the Michigan Bullard-Plawecki Employee

Right to Know Act, Mich. Comp. Laws § 423.501 *et seq.* — both state law claims. The plaintiffs allege the following damages:

> Plaintiffs White and Flanders demand their damages under both the Polygraph Protection and Bullard-Plawecki Employee Right to Know Acts, including but not limited to injunctive relief restoring them to their employment, or in the alternative to future damages in the premises presented, their actual damages, including double wages lost in consequences of the cited statutory violations and their unlawful discharges, penalties of $200 per violation, interest, reasonable attorney fees, costs, MCL 37.208; 423.511, and such other and further relief as legally permitted or mandated in the premises.

Compl. ¶ 14.

The plaintiffs served the defendant on November 13, 2009, and the defendant removed the case on December 1, 2009 and filed an answer on the same date. On December 11, 2009, the Court issued its standard standing order requiring submission of information regarding removal. *See* Order [dkt. # 3]. The defendant responded on December 17, 2009, asserting, as it did in its initial notice of removal, that the plaintiffs' allegations regarding damages satisfy the more-likely-than-not standard for determining amount in controversy on removal.

On December 28, 2009, the plaintiffs moved to remand. In their motion papers, the plaintiffs assert that White, who was 51 at the time she was fired, was earning $11.13 per hour when she was fired, and Flanders, who was 28, was making $12.75 per hour. In 2008, White's gross earnings were $27,137.11, and Flanders earned $41,497.12 in the same period.

II.

Section 1441(a) of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). When an action has been removed

improperly, the matter may be remanded to the state court from which it came pursuant to 28 U.S.C. § 1447(c).

Federal courts have jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The amount in controversy is assessed as of the time the complaint is filed, *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000), or, in the case of removal, when the removal notice is filed, *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)); *see also Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). "[T]he amount in controversy must be calculated based on a reasonable reading of the complaint, and a plaintiff's stipulation subsequent to removal as to the amount in controversy or the types of relief sought is of no legal significance to the court's determination." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002) (internal quotation marks omitted).

The Sixth Circuit places the "burden on a defendant seeking to remove an action to federal court to show by a preponderance of the evidence that the amount in controversy requirement has been met." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir 2001) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (Feb. 23, 2010)). This standard "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the

amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Gafford*, 997 F.2d at 159. The defendant must show that it is "more likely than not" that the plaintiff is seeking damages in excess of the $75,000 limit. *Id.* at 158. To make such a showing, the removing party must transcend from the realm of conceivable to the realm of possible by making an attempt to quantify the plaintiff's injuries. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997) (cited in *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)).

The plaintiffs here concede diversity of citizenship. However, they insist that as of the time the defendant filed a removal notice on December 1, 2009, Flanders's damages were only $36,176.22, and White's damages were $26,471.72 (or possibly $31,037.07, depending on the calculation technique). They arrive at these figures as follows: Flanders's year-to-date wages for approximately twenty-three weeks of work between January 1 and June 14, 2009 amounted to $16,980.53, or an average wage of $738.29 per week. White's year-to-date wages for the same period were $16,711.38, or $726.58 per week. Based on these weekly averages, by the time the defendant removed the case on December 1, 2009 (24.5 weeks after termination), Flanders lost $18,088.11 in wages, and White lost $17,801.21. When doubled, as provided under the Michigan Polygraph Protection Act, Flanders's damages as of the time of removal constituted $36,176.22 and White's $35,602.42. However, sometime after her discharge from the defendant, White became employed by Trinity, Inc. working as a bus driver earning $11.26 per hour. As of the date of removal, Trinity had paid White $4,565.35. Therefore, as of the date of removal, Flanders's and White's respective damages were $36,176.22 and $31,037.07. (For White, this figure is $26,471.72 if the wage loss is doubled *after* deducting her alternative income from Trinity.) When the damages

are calculated as of the time the complaint was filed, they amounted to $28,793.32 for Flanders and $25,387.44 (or $22,438.20 if doubling occurs *after* deducting alternative income) for White. Even though under the Michigan Polygraph Protection Act, attorney's fees are considered to be damages, as of the date of removal, the plaintiffs say they incurred only $3,217.50 in attorney's fees. In addition, the Michigan Bullard-Plawecki Employee Right to Know Act provides for statutory damages of $200 per violation, or arguably $200 for each Flanders and White. When each plaintiff's damages are considered separately, they fall far below the $75,000 threshold necessary to invoke the Court's jurisdiction.

The defendant responds first with the argument that the plaintiffs damages should be aggregated, which is a non-starter. "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite judicial amount." *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911); *see also Sturgeon v. Great Lakes Steel Corp.*, 143 F.2d 819, 821 (6th Cir. 1944) ("The rule is thoroughly settled that where two or more plaintiffs have separate and distinct demands in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount."). The defendant maintains, however, that even if the Court declines to aggregate the two plaintiffs' damages, the amount-in-controversy requirement is still met. The defendant emphasizes that the plaintiffs are seeking future damages for wrongful discharge, presumably up to their retirement age. Assuming that White has 13 years and Flanders has 37 years until retirement, the defendant submits that the damages of each exceed the jurisdictional threshold. The defendant states that each plaintiff's request for reinstatement or for lost wages paid in the future translates to more than $75,000. The defendant also points out that the plaintiffs are seeking injunctive relief that would

restore them to their previous positions. The defendant contends that the average tenure at Loomis for an Armored Services Technician is 4.21 years and the average tenure for a driver is 6.25 years. Given their gross earnings, White's damages could be $169,606.93 and Flanders's could be $174,702.87.

In determining diversity jurisdiction under 28 U.S.C. § 1332, the amount in controversy is measured by the value of the object of litigation, which means that the Court must account for the value of injunctive relief, when it is sought. *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009). The Sixth Circuit has not yet resolved whether it "view[s] the amount in controversy from the perspective of the plaintiff or the defendant," *id*. at 770 n.1, although the majority rule appears to weigh in favor of adopting the plaintiff's point of view as to the costs of compliance. *S. States Police Benevolent Ass'n v. Second Chance Body Armor, Inc.*, 336 F. Supp. 2d 731, 734 (W.D. Mich. 2004).

With respect to the lost wages, courts have used the wages the plaintiff stands to recover by the time the case concludes in calculating the amount in controversy. *See Andrews v. E.I. Du Pont de Nemours & Co*., 447 F.3d 510, 515 (7th Cir. 2006) (counting future lost wages as one of the factors that help the plaintiff meet the jurisdictional threshold); *Chabal v. Reagan*, 822 F.2d 349, 356-57 (3d Cir. 1987) (where the plaintiff asserted a right to continued employment, the amount in controversy for Tucker Act purposes is not limited to the amount of backpay accrued at the time the complaint was filed, but also includes the amount of backpay the plaintiff ultimately stands to recover after the case concludes) (citing *Shaw v. Gwatney*, 795 F.2d 1351, 1354-55 (8th Cir. 1986) and *Goble v. Marsh*, 684 F.2d 12, 15-16 & n.5 (D.C. Cir. 1982)); *Broglie v. MacKay-Smith*, 541 F.2d 453 (4th Cir. 1976) (diversity jurisdiction existed where buyer's expenses in caring for a lame

horse pending rescission of the purchase would accrue to more than the jurisdictional minimum before the court would likely rule on a motion to dismiss, even though damages were less than the jurisdictional minimum when the complaint was filed); *DeWolff v. Hexacomb Corp.*, No. 09-548, 2009 WL 2370723, at *3 (W.D. Mich. July 30, 2009) (holding that the backpay component of the plaintiff's damages runs from the date of the plaintiff's termination through the date of entry of the judgment in the case); *cf. Weinberger v. Wiesenfeld*, 420 U.S. 636, 642 n.10 (1975) (counting the present value of future Social Security benefits in calculating the amount in controversy). Where a state statute provides for award of statutory damages and recovery of attorney's fees, such damages and fees can be considered in determining whether the jurisdictional amount has been met. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168-69 (6th Cir. 1975).

In the end, however, in diversity cases, damages must be measured according to state law. In this case, the plaintiffs seek recovery under the Michigan's Polygraph Protection Act ("PPA"), Mich. Comp. Laws § 37.201 *et seq.*, and the Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws § 423.501 *et seq.* The PPA prohibits employers from requesting or requiring that an employee or applicant submit to a polygraph examination as a condition of employment, promotion, or change in status of employment, or as an express or implied condition of a benefit or privilege of employment. Mich. Comp. Laws § 37.203(1)(a). The act prohibits an employer from "tak[ing] any action against an employee or applicant for employment based upon an alleged or actual opinion that the employee or applicant for employment did not tell the truth during a polygraph examination." Mich. Comp. Laws § 37.204. The act gives an aggrieved employee a private cause of action "for injunctive relief or damages, or both." Mich. Comp. Laws § 37.207(1). "For purposes of [the] act, damages include damages for injury or loss caused by each violation of this act and

reasonable attorney's fees . . . and [i]f an employee is discharged in violation of [the] act, damages for which the employer is liable under this section shall include double the wages lost." Mich. Comp. Laws § 37.207(2)-(3).

The Bullard-Plawecki Employee Right to Know Act requires an employer, upon a written request by an employee, to provide an employee with access to the employee's personnel record and with the ability to obtain a copy of such record. *See* Mich. Comp. Laws §§ 423.503-423.504. The act provides an employee a private right of action for violations, and a court may compel production of the sought-after employment records. The employee may recover "actual damages plus costs," and [f]or a wilful and knowing violation of this act, $200.00 plus costs, reasonable attorney's fees, and actual damages." Mich. Comp. Laws § 423.511(a)-(b).

Comparing the relief afforded by these statutes, it is evident that the plaintiffs will achieve the greatest relief under the PPA. Under that statute, Flanders's case meets the amount-in-controversy requirement. According to the motion papers, in 2008, Flanders's annual income with the company was $41,497.12 (or approximately $798 a week). In the 23 weeks between January 1, 2009 until his termination on June 14, 2009, Flanders earned $16,980.53 (or approximately $738.29 a week). He has been out of work for over a year, so double his projected annual income exceeds $75,000 even without adding his share of the statutory attorney's fees. Calculating future wages, which would approximate the value of the injunction from the perspective of each party, makes the case only more clear.

White's damages are not so easily reconciled, however, because she had found another job at the time of removal, and her projected loss is somewhat frozen below $75,000. No matter. Although these cases do not qualify for aggregation, since each plaintiff's employment claim is

separate and they are joined solely for convenience, *see Everett*, 460 F.3d at 824 (noting that "[a] common interest in a litigation recovery thus represents a necessary, but by itself insufficient, ground to qualify claims for aggregation," and that "[t]he point of the 'common fund exception' is not to permit plaintiffs to aggregate their claims whenever they share a proprietary interest in the proceeds of litigation; it is to permit them to aggregate their claims when they jointly own, or have an undivided interest in, property at issue in the litigation"), jurisdiction over Flanders's claim allows the Court to hear White's claim, too. As the Seventh Circuit has held, "[o]nce one plaintiff satisfies the amount-in controversy requirement for diversity jurisdiction, the other plaintiffs come in under the court's supplemental jurisdiction regardless of whether their individual claims satisfy the requirements of § 1332." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006).

One might reasonably conclude that the Seventh Circuit's pronouncement collides with the Supreme Court's earlier holding in *Troy Bank of Troy* that when there are multiple plaintiffs, "the demand of *each* [must] be of the requisite judicial amount." *Troy Bank of Troy*, 222 U.S. at 40 (emphasis added). However, the Supreme Court resolved the apparent conflict by interpreting the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), holding as follows:

> The single question before us, therefore, is whether a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a "civil action of which the district courts have original jurisdiction." If the answer is yes, § 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy. If the answer is no, § 1367(a) is inapplicable and, in light of our holdings in *Clark* and *Zahn*, the district court has no statutory basis for exercising supplemental jurisdiction over the additional claims.
>
> We now conclude the answer must be yes. When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and

there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment. If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a "civil action" within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint.

*Id*. at 558-59. The Court concluded that "where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy," "the threshold requirement of § 1367(a) is satisfied." *Id*. at 566. The Court denied that the exceptions enumerated in section 1367(b) run counter to its holding. *Id*. at 565-66. *See also Olden v. LaFarge Corp*., 383 F.3d 495 (6th Cir. 2004) (establishing the same principle in a class action context).

Under section 1367(a), the district court has jurisdiction over pendent claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The complaint plainly demonstrates that Flanders's and White's claims, although separate, are so related. They arose from the same incident, and the defendant took the same adverse action against them. The wrongs are individualized, and the damages are separate, but the claims are part of the same "case or controversy."

III.

The Court is satisfied that it has subject matter jurisdiction over the case, because the parties are diverse, Flanders's claim meets the amount-in-controversy limit in 28 U.S.C. § 1332(a), and White's claim forms part of the same case as Flanders's claim.

Accordingly, it is **ORDERED** that the plaintiff's motion to remand [dkt #7] is **DENIED**.

s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

Dated: July 28, 2010

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 28, 2010.
>
>        s/Teresa Scott-Feijoo
>        TERESA SCOTT-FEIJOO